IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY AND SATTERFIELD & PONTIKES CONSTRUCTION, INC., | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. 4:15-CV-01926 |
| UNITED STATES FIRE INSURANCE COMPANY, | § | |
| Defendant. | § | |

**PLAINTIFFS' SECOND AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW American Guarantee and Liability Insurance Company and Satterfield & Pontikes Construction, Inc. and by their Second Amended Complaint would show the Court the following:

## I.
## THE PARTIES

1. Plaintiff American Guarantee and Liability Insurance Company ("AGLIC") is a New York corporation engaged in the insurance business with a statutory home office located at One Liberty Plaza, 165 Broadway, 32nd Floor, New York, New York 10006, and its principal place of business located at 1400 American Lane, Schaumburg, Illinois 60196. AGLIC is authorized to transact business and has transacted business in Texas.

2. Plaintiff Satterfield & Pontikes Construction, Inc. ("S&P") is a corporation engaged in the construction business with a corporate office and principal place of business located at 11000 Equity Drive, Suite 100, Houston, Texas 77041.

3. Defendant United States Fire Insurance Company ("USFI") is a Delaware corporation engaged in the insurance business with its administrative office or principal place of business located at 305 Madison Avenue, Morristown, New Jersey 07960 and doing business in the State of Texas. United States Fire Insurance Company has been served with process and appeared in this action.

4. Intervenor Amerisure Mutual Insurance Company ("Amerisure") is a Michigan corporation with its principal place of business in Michigan and has appeared in this action.

## II.
## JURISDICTION

5. The jurisdiction of this Court over the subject matter of this action is predicated on Fed. R. Civ. P. 57 and 28 U.S.C. §2201. This matter is properly before this Honorable Court under 28 U.S.C. §2201 as complete diversity exists between the parties, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

## III.
## VENUE

6. Venue is proper in this matter pursuant to 28 U.S.C. §1391 as the contract for insurance was issued to the insured in this district, thus a substantial part of the events or omissions giving rise to the claims occurred in this district.

## IV.
## BACKGROUND FACTS/UNDERLYING SUIT

7. On May 20, 2011, Zapata County filed suit against S&P in the 49th Judicial District Court of Zapata County, Texas, Cause No. 7,779, alleging negligence and breach of contract arising out of the construction of the Zapata County Courthouse.

8. By motion and per contractual requirements, the matter was ordered to proceed before the American Arbitration Association ("AAA"), AAA Case No. 01-14-0001-0722 ("the Underlying Arbitration").

9. S&P was the general contractor, overseeing the construction of the Zapata County Courthouse, located at 200 E. 7th Avenue, Zapata, Zapata County, Texas 78076 (the "Project").

10. In the Underlying Arbitration, Zapata County alleged that the negligent acts or omissions of S&P and their subcontractors involved in the Project caused damages and loss to the property. Additionally, it alleged that S&P failed to comply with contract documents, failed to meet minimum industry standards, and failed to construct the Project in a good and workmanlike manner, thereby breaching its contract with Zapata County.

11. As stated in the pleadings of Zapata County, all of the damages arise "from the construction of the Zapata Courthouse."

12. All damages were to the single building located at 200 E. 7th Avenue, Zapata, Zapata County, Texas 78076.

13. On March 28, 2016, the arbitrators in the Underlying Arbitration issued the Final Award, finding that Zapata County's damages were the result of S&P's failure to build

the courthouse in a good and workmanlike manner and failure to properly supervise its subcontractors in constructing the courthouse.

14. In the Final Award, the arbitrators awarded Zapata County $6,072,000 in damages plus attorney fees in the sum of $1,500,000 together with prejudgment interest in the sum of $430,458 through March 22, 2016, and thereafter at the daily rate of $609.17 through the date of the Final Award.

15. On March 30, 2016, Zapata County filed its motion to confirm the arbitration award and enter judgment. Judgment was entered following a hearing on April 7, 2016, for $8,032,367.74, plus interest.

16. On April 1, 2016, USFI, in a letter from its coverage counsel to the undersigned counsel, set out dozens of purported and ineffective defenses to coverage for the portion of the award in excess of $2,000,000 within its layer of coverage. In the letter, USFI requested additional information, subsequent to the issuance of the Final Award and after having been copied on all information, documentation and reports of defense counsel; nevertheless, the letter constituted a denial of coverage to S&P.

17. Ultimately, the judgment was funded on or about May 13, 2017, without contribution from USFI, in the amount of $8,063,641.78. Of that amount, AGLIC paid $1,985,604.60, S&P paid $439,131.98, and Intervenor Amerisure paid $1,146,405.10. The remainder of the judgment, $4,492,500, was funded by settlements payments made by S&P's subcontractors. Despite repeated requests for contribution, U.S. Fire made no payments toward satisfaction of the judgment against its insured.

## V.
## INSURANCE POLICIES

18. AGLIC issued Commercial General Liability Policy No. GLO 3436871-05 to S&P for the period of December 31, 2006 to December 31, 2007, with a $1,000,000 per occurrence limit, a $2,000,000 general aggregate limit, and a $2,000,000 products-completed operations aggregate limit (the "AGLIC Policy").[1]

19. The AGLIC Policy covers damages that the insured becomes legally obligated to pay as damages "because of" "property damage," but only if the "property damage" is caused by an "occurrence."

20. The AGLIC Policy defines an "occurrence" as follows:

> "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

21. The AGLIC Policy contains the following provision regarding payments made under the policy:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

***

**8. Transfer Of Rights Of Recovery Against Others To Us**

> If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after the loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

22. Intervenor Amerisure issued the following policies to S&P: Policy No. CPP-205092000000 to S&P with effective dates of December 31, 2007 through December 31, 2008,

[1] S&P is also insured under Commercial General Liability Policy, No. GLO3436871-04 issued to S&P by Zurich American Insurance Company for the period of December 31, 2005 to December 31, 2006.

Policy No. CPP-205092010008 with effective dates of December 31, 2008 through December 31, 2009, Policy No. CPP-2050592020009, with effective dates of December 31, 2009 through December 31, 2010, and Policy No. CPP-205092030010, with effective dates of December 31, 2010 through December 31, 2011 ("the Amerisure Policies").

23. USFI issued Commercial Umbrella Policy No. 553-089470-4 to Satterfield & Pontikes for the period of December 31, 2006 to December 31, 2007, with a $25,000,000 per occurrence limit, a $25,000,000 general aggregate limit, and a $25,000,000 products-completed operations aggregate limit (the "USFI Umbrella Policy").[2]

24. As umbrella coverage, the USFI Umbrella Policy was triggered upon exhaustion of the limits of the underlying primary commercial liability policy.

25. As the insured under the AGLIC Policy, the USFI Umbrella Policy, and the Amerisure Policies, S&P is entitled under Texas law to choose a policy or policies from among triggered insurance coverage and selected the AGLIC Policy and the USFI Policy to respond to the Underlying Arbitration and the Final Award issued therein.

26. AGLIC and Amerisure provided S&P with a defense in the Underlying Arbitration where the alleged damages exceeded both the per occurrence and aggregate limits of the AGLIC Policy.

27. AGLIC is in dispute with USFI as to their obligations under their respective insurance policies to fund the judgment, and seeks reimbursement for amounts paid.

[2] USFI has also issued to S&P commercial umbrella policies Nos. 553-088188-6, 553-090741-2 and 553-091898-6 for the policy periods of December 31, 2005 to December 31, 2006, December 31, 2007 to December 31, 2008, and December 31, 2008 to December 31, 2009, respectively. These policies are umbrella policies over primary commercial general liability policies issued to S&P by Zurich American Insurance Company and Amerisure for the same periods.

28. As the insured under the AGLIC and USFI Policies, S&P also contends that the USFI Policy was triggered after AGLIC has paid its $1,000,000 per occurrence limit under the AGLIC Policy.

29. In particular, based on the allegations of Zapata County that all the damages arose from the construction of the Zapata Courthouse and occurred at that single location, the Underlying Arbitration arises out of a single cause and constitutes a single "occurrence" under the AGLIC Policy. The position of AGLIC and S&P is also based on the arbitrators' finding that S&P's failure to build the courthouse in a good and workmanlike manner and failure to properly supervise its subcontractors resulted in the damages awarded to Zapata County by the arbitrators. As such, AGLIC was obligated to pay at most, only its $1,000,000 per occurrence limits under the AGLIC Policy, subject to re-allocation under the Amerisure Policies as necessary.

30. Contrarily, USFI contends that the Underlying Arbitration arises out of multiple "occurrences" and that its policy obligations are not triggered.

31. USFI has also rejected S&P's allocation of the proceeds from the subcontractor settlements despite the fact that USFI approved the entering into of those settlements prior to entry of the Final Award.

32. The dispute regarding the number of "occurrences" on which the judgment is based, the allocation of the subcontractor settlements, as well as numerous of the other purported and inapplicable coverage defenses, has resulted in over payments by AGLIC and even payments by S&P to satisfy the judgment.

## VI.
## CAUSE OF ACTION: BREACH OF CONTRACT

33. AGLIC and S&P re-allege and incorporate by reference the allegations contained above in paragraphs 1-32.

34. The claims made in the Underlying Arbitration on which the judgment is based constitute a single "occurrence" under the selected AGLIC Policy. Thus, pursuant to the AGLIC Policy, AGLIC was only obligated to pay the per occurrence limit of $1,000,000 for indemnity of covered damages arising from the Underlying Arbitration before that Policy is fully and completely exhausted.

35. Moreover, the selected USFI Umbrella Policy is triggered and a duty is owed under the indemnity provisions of the selected USFI Umbrella Policy once the selected AGLIC Policy has exhausted the $1,000,000 per occurrence policy limit.

36. AGLIC and S&P have complied with the conditions precedent to coverage under the policies and the parties agree that coverage is triggered under the policies, subject to the terms and conditions of those policies.

37. However, despite the trigger of coverage and the selection of policies by the insured, S&P, USFI has refused to honor its contractual obligation to fund the portion of the judgment within its limits, asserting that the property damage alleged against S&P in the Underlying Arbitration arises from multiple "occurrences" and mis-allocation of the subcontractor settlements, improperly refusing to pay pursuant to the selected USFI Umbrella Policy, relying on purported and inapplicable coverage defenses.

38. USFI and S&P have entered into a contract for insurance, the USFI Umbrella Policy.

39. S&P has satisfied all conditions precedent in the USFI Umbrella Policy, including payment of premiums.

40. AGLIC has paid in excess of its per occurrence limit of $1,000,000.

41. USFI owes a duty to S&P under the USFI Umbrella Policy to fund the portion of the judgment within its limits and in excess of the AGLIC Policy's $1,000,000 per occurrence limit.

42. USFI has refused and failed to fulfill its contractual obligations owed to S&P under the USFI Umbrella Policy.

43. USFI's refusal and failure to fulfill its contractual obligations to S&P constitutes a repudiation of the contract or, alternatively, a material breach of contract, which has resulted in overpayment by AGLIC and payments by S&P.

44. S&P seeks recovery of all sums it paid toward the judgment.

45. AGLIC, as subrogated through S&P, and/or as otherwise allowed by law, seeks to recover all amounts paid in excess of its allocated share of the $1,000,000 per occurrence limit.

46. Alternatively or additionally, as may be necessary, AGLIC, as subrogated through S&P, and/or as otherwise allowed by law, seeks to recover Amerisure's allocated share of the $1,000,000 per occurrence primary limit, whether such amount is in turn recovered by Amerisure from USFI or otherwise. In this respect, coverage is triggered under the Amerisure Policies, and Amerisure owes AGLIC its allocated share.

47. AGLIC and S&P have incurred additional expenses, including attorney's fees and expenses, in pursuing this action, and seek to recover such expenses as well.

## VII.
## CAUSE OF ACTION-VIOLATION OF TEXAS INSURANCE CODE

48. S&P re-alleges and incorporates by reference the allegations contained above in paragraphs 1-47.

49. S&P also brings this action against USFI pursuant to Sections 541.060 and 541.152 of the Texas Insurance Code. All conditions precedent to maintain this cause of action have been performed, have occurred, or are otherwise excused by law.

50. USFI has engaged in the following false, misleading, deceptive acts or practices pursuant to Section 541.060(a) of the Texas Insurance Code:

a. Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim prior to entry of the Final Award to which USFI's liability had become reasonably clear;

b. Failing within a reasonable time to affirm or deny coverage of a claim to S&P, unreasonably contending that despite AGLIC's offer to contribute its limits to settlement, the AGLIC policy was still not exhausted, and continuing to refuse to contribute toward a settlement even after entry of the $8,000,000+ Final Award against its insured;

c. Failing to pay a claim without conducting a reasonable investigation with respect to the portion of the Final Award in excess of the $1,000,000 underlying limit and prejudgment interest paid by AGLIC, and even after the contribution of Amerisure to the payment of the Final Award; and

d. Other false, misleading, deceptive acts or practices under Section 541.060(a) as discovery may reveal.

51. USFI's conduct was and is a producing cause of actual damages suffered by S&P.

52. USFI acted knowingly in committing the following false, misleading, and deceptive acts and practices:

a. Refusing to honor its contractual obligation to fund the portion of the Final Award in excess of the $1,000,000 limit and prejudgment interest paid by AGLIC, thereby delaying payment of the Final Award; and

b. Committing other false, misleading and deceptive acts and practices as discovery may reveal.

53. As a result of these knowingly false, misleading and deceptive acts and practices of USFI, S&P seeks trebled damages under Section 541.152(b) of the Texas Insurance Code.

## VIII.
## ATTORNEYS' FEES

54. AGLIC and S&P have been forced to hire the undersigned attorneys to prosecute this claim. Pursuant to 28 U.S.C. §2202, AGLIC and S&P respectfully request that the Court award them the reasonable and necessary attorneys' fees they incur in this lawsuit. S&P also requests an award of its reasonable and necessary attorneys' fees pursuant to Chapter 38 of the Texas Civil Practices and Remedies Code arising out of USFI's breach of its policy contract with S&P, and pursuant to Section 541.152(a)(1) of the Texas Insurance Code.

## IX.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs AGLIC and S&P respectfully pray that this Court enter a judgment against Defendant for the following:

1. Due to USFI's failure to pay indemnity in excess of the AGLIC's $1,000,000 per occurrence limit and breach of the insurance contract with S&P, AGLIC and S&P are entitled to reimbursement for amounts paid for the judgment.

2. Alternatively or additionally, as may be necessary, AGLIC is entitled to reimbursement from Amerisure for amounts paid for the judgment.

3. S&P and AGLIC are entitled to recover their costs, expenses and fees incurred in pursuing this action for coverage from USFI.

4. S&P is entitled to recover statutory damages, including trebled damages, under Chapter 151 of the Texas Insurance Code.

5. All other relief to which AGLIC and S&P are entitled.

Respectfully submitted,

*/s/ Rebecca DiMasi*
Rebecca DiMasi
State Bar No. 24007115
Southern District ID No: 29641
**BUCHANAN DIMASI DANCY & GRABOUSKI LLP**
9600 Great Hills Trail, Suite 300 West
Austin, Texas 78759
Telephone: 512.225.2800
Facsimile: 512.225.2801
Email: rdimasi@bddglaw.com

ATTORNEYS FOR PLAINTIFF AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY

*/s/ Patrick J. Wielinski*
Patrick J. Wielinski
State Bar No. 21432450
**COKINOS, BOSIEN & YOUNG**
800 Crestview Tower
105 Decker Court
Irving, TX 75062
Telephone: 817-635-3620
Facsimile: 817-635-3633
Email: pwielinski@cbylaw.com

And

John C. Warren
State Bar No. 24066264
Southern District ID No. 2375138
COKINOS, BOSIEN &YOUNG
Four Houston Center
1221 Lamar, 16th Floor
Houston, Texas 77010
Telephone: (713) 535-5577
Facsimile: (713) 535-5533
Email: jwarren@cbylaw.com

ATTORNEYS FOR PLAINTIFF
SATTERFIELD & PONTIKES

CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2016, I electronically filed the foregoing pleading with the Clerk of Court, using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Rebecca DiMasi*
Rebecca DiMasi