**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY AND SATTERFIELD & PONTIKES CONSTRUCTION, INC., Plaintiff,** | § | |
| **V.** | § | **CIVIL ACTION NO. 4:15-CV-01926** |
| **UNITED STATES FIRE INSURANCE COMPANY, Defendant** | § | |

**INTERVENOR AMERISURE MUTUAL INSURANCE COMPANY'S AMENDED COMPLAINT IN INTERVENTION**

**COMES NOW** Amerisure Mutual Insurance Company ("Amerisure" or "Intervenor"), and by its Amended Complaint in Intervention would show the Court the following:

## I.
## THE PARTIES

1. Plaintiff American Guarantee and Liability Insurance Company ("AGLIC") is a New York corporation engaged in the insurance business with a statutory home office located at One Liberty Plaza, 165 Broadway, 32nd Floor, New York, New York 10006, and its principal place of business located at 1400 American Lane, Schaumburg, Illinois 60196. AGLIC is authorized to transact business and has transacted business in Texas.

2. Plaintiff Satterfield & Pontikes Construction, Inc. ("S&P") is a corporation engaged in the construction business with a corporate office and principal place of business located at 11000 Equity Drive, Suite 100, Houston, Texas 77041.

3. Defendant, United States Fire Insurance Company ("USFI"), is a Delaware corporation engaged in the insurance business with its administrative office or principal place of business located at 305 Madison Avenue, Morristown, New Jersey 07960 and doing business in

the State of Texas. United States Fire Insurance Company has been served with process and appeared in this action.

4. Intervenor, Amerisure Mutual Insurance Company ("Amerisure"), is a Michigan corporation with its principal place of business located in Farmington Hills, Michigan.

## II.
## JURISDICTION

5. The jurisdiction of this Court over the subject matter of this action is predicated on Fed. R. Civ. P. 57 and 28 U.S.C. §2201. This matter is properly before this Honorable Court under 28 U.S.C. §2201 as complete diversity exists between the parties, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

## III.
## VENUE

6. Venue is proper in this matter pursuant to 28 U.S.C. §1391 as the contract for insurance was issued to the insured in this district, thus a substantial part of the events or omissions giving rise to the claims occurred in this district.

## IV.
## BACKGROUND FACTS/UNDERLYING SUIT

7. On May 20, 2011, Zapata County filed suit against S&P in the 49th Judicial District Court of Zapata County, Texas, Cause No. 7,779, alleging negligence and breach of contract arising out of the construction of the Zapata County Courthouse.

8. By motion and per contractual requirements, the matter was ordered to proceed before the American Arbitration Association ("AAA"), AAA Case No. 01-14-0001-0722 ("the Underlying Arbitration").

9. S&P was the general contractor, overseeing the construction of the Zapata County Courthouse, located at 200 E. 7th Avenue, Zapata, Zapata County, Texas 78076 (the "Project").

10. In the Underlying Arbitration, Zapata County alleged that the negligent acts or omissions of S&P and their subcontractors involved in the Project caused damages and loss to the property. Additionally, it alleged that S&P failed to comply with contract documents, failed to meet minimum industry standards, and failed to construct the Project in a good and workmanlike manner, thereby breaching its contract with Zapata County.

11. As stated in the pleadings of Zapata County, all of the damages arise "from the construction of the Zapata Courthouse."

12. All damages were to the single building located at 200 E. 7th Avenue, Zapata, Zapata County, Texas 78076.

13. On March 28, 2016, the arbitrators in the Underlying Arbitration issued the Final Award, finding that Zapata County's damages were the result of S&P's failure to build the courthouse in a good and workmanlike manner and failure to properly supervise its subcontractors in constructing the courthouse.

14. In the Final Award, the arbitrators awarded Zapata County $6,072,000 in damages plus attorney fees in the sum of $1,500,000 together with prejudgment interest in the sum of $430,458 through March 22, 2016, and thereafter at the daily rate of $609.17 through the date of the Final Award.

15. On March 30, 2016, Zapata County filed its motion to confirm the arbitration award and enter judgment. Judgment was entered following a hearing on April 7, 2016, for $8,032,367.74, plus interest.

16. On April 1, 2016, USFI, in a letter from its coverage counsel to the undersigned counsel, set out dozens of purported and ineffective defenses to coverage for the portion of the award in excess of $2,000,000 within its layer of coverage. In the letter, USFI requested

additional information, subsequent to the issuance of the Final Award and after having been copied on all information, documentation and reports of defense counsel; nevertheless, the letter constituted a denial of coverage to S&P.

17. Ultimately, the judgment was funded on or about May 13, 2016, without contribution from USFI, in the amount of $8,063,641.78. Of that amount, AGLIC paid $1,985,604.60, S&P paid $439,131.98, and Amerisure paid $1,146,405.10. The remainder of the judgment, $4,492,500, was funded by settlement payments made by S&P's subcontractors. Despite repeated requests for contribution, USFI made no payments toward satisfaction of the judgment against its insured.

## V.
## INSURANCE POLICIES

18. Amerisure issued S&P four consecutive commercial general liability policies (the "Amerisure Policies") between December 31, 2007, and December 31, 2011, with the following policy numbers and policy years:

(a) Policy No. CPP-2050592000000, effective 12/31/ 2007–12/31/2008.

(b) Policy No. CPP-2050592010008, effective 12/31/2008–12/31/2009 (renewed from previous policy).

(c) Policy No. CPP-2050592020009, effective 12/31/2009–12/31/2010 (renewed from previous policy).

(d) Policy No. CPP-2050592030010, effective 12/31/2010–12/31/2011 (renewed from previous policy.

Each policy has a $1,000,000 per occurrence limit, $2,000,000 aggregate limit, and $2,000,000 products aggregate limit.

19. The Amerisure Policies include the following insuring agreement:

**SECTION 1 – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a**. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period;

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then

any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** Prior to the policy period, no insured listed under Paragraph **1**. of **Section II – Who Is An Insured** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

20. AGLIC issued Commercial General Liability Policy No. GLO 3436871-05 to Satterfield & Pontikes for the period of December 31, 2006 to December 31, 2007, with a $1,000,000 per occurrence limit, a $2,000,000 general aggregate limit, and a $2,000,000 products-completed operations aggregate limit (the "AGLIC Policy"). This policy's insuring agreement mirrors that in Amerisure's Policy, as does the definition of "occurrence."

21. USFI issued commercial umbrella Policy No. 553-089470-4 with a $25,000,000 per occurrence limit, a $25,000,000 general aggregate limit, and a $25,000,000 products-

completed operations aggregate limit (the "USFI Umbrella Policy") for the period of December 31, 2006 to December 31, 2007.

**VI.**
**JUSTICIABLE INTEREST**

22. AGLIC and Amerisure provided S&P with a defense in the Underlying Arbitration.

23. As the insured under the AGLIC Policy, the Amerisure Policies, the Umbrella Policy, and several other policies, S&P is entitled under Texas law to choose a policy or policies from among triggered insurance coverage.

24. S&P selected the AGLIC Policy and the USFI Umbrella Policy in effect between December 31, 2006 to December 31, 2007, to respond to the Underlying Arbitration and the Final Award issued therein.

25. As umbrella coverage, the USFI Umbrella Policy is triggered when the limits of the AGLIC Policy is exhausted.

26. Amerisure is in dispute with USFI as to their obligations under their respective insurance policies to fund the judgment, and seeks reimbursement for amounts paid.

27. In particular, based on the allegations of Zapata County that all the damages arose from the construction of the Zapata Courthouse and occurred at that single location, AGLIC and Amerisure have asserted the position that the Underlying Arbitration arises out of a single cause and constitutes a single "occurrence" under the AGLIC and Amerisure Policies. AGLIC's and Amerisure's position are also based on the arbitrators' finding that S&P's failure to build the courthouse in a good and workmanlike manner and failure to properly supervise its subcontractors resulted in the damages awarded to Zapata County by the arbitrators.

28. As the insured under the AGLIC, Amerisure, and USFI Policies, S&P also contends that the USFI Policy is triggered after AGLIC has paid its $1,000,000 per occurrence limit under the AGLIC Policy.

29. Contrarily, USFI contends that the Underlying Arbitration arises out of multiple "occurrences" and that its policy obligations are not triggered until and unless all of the primary insurers' policies are exhausted.

30. The dispute regarding the number of "occurrences" on which the judgment is based, as well as numerous other purported and inapplicable coverage defenses, has resulted in overpayments by Amerisure to satisfy the judgment.

31. An actual controversy therefore exists between the parties hereto pursuant to 28 U.S.C. §2201 *et seq.*, and Rule 57 of the Federal Rules of Civil Procedure, and this Court is vested with the power in the instant case to declare and adjudicate the rights and other legal relationships of the parties to this action with reference to issues raised by this Complaint.

## VII.
## COUNT I - DECLARATORY JUDGMENT

32. Amerisure re-alleges and incorporates by reference the allegations contained above in paragraphs 1-31.

33. The Amerisure policies are not triggered because the insured, S&P, has selected the AGLIC and USFI Umbrella Policies that were in effect for the period of December 31, 2006 to December 31, 2007, to provide insurance coverage for the Final Award and the AGLIC and USFI Umbrella Policies provide sufficient insurance coverage for the Final Award.

34. Amerisure owes nothing under the Amerisure Policies with regard to the Final Award because the Final Award involves a "known loss," or more specifically, "property damage" that was known by S&P prior to the inception of the first Amerisure policy. Because

S&P first knew of the "property damage" involved in the Final Award, the Amerisure Policies do not provide insurance coverage for any part of the Final Award.

**<u>COUNT II – EQUITABLE SUBROGATION</u>**

35. Amerisure re-alleges and incorporates by reference the allegations contained above in paragraphs 1-34.

36. Despite owing nothing under the Amerisure Policies, Amerisure paid $1,146,405.10 in order to protect S&P in light of the judgment against S&P.

37. USFI owes a duty to S&P under the USFI Umbrella Policy to fund the portion of the judgment within its limits and in excess of the AGLIC Policy's $1,000,000 per occurrence limit.

38. USFI has refused and failed to fulfill its contractual obligations owed to S&P under the USFI Umbrella Policy.

39. USFI's refusal and failure to fulfill its contractual obligations to S&P constitutes a repudiation of the contract or, alternatively, a material breach of contract, which has resulted in payments by Amerisure.

40. Amerisure, as subrogated through S&P, and/or as otherwise allowed by law, seeks to recover all amounts paid by Amerisure.

41. Amerisure has incurred additional expenses, including attorney's fees and expenses, in pursuing this action, and seeks to recover such expenses as well.

**VIII.**
**<u>PRAYER</u>**

**WHEREFORE, PREMISES CONSIDERED**, Intervenor Amerisure Mutual Insurance Company respectfully prays that this Court enter a judgment against Defendant for the following:

1. Declaration that Amerisure owes no duty to indemnify S&P under the Amerisure Policies with regard to the Final Award;

2. Due to USFI's failure to pay indemnity in excess of the AGLIC's $1,000,000 per occurrence limit and breach of the insurance contract with S&P, Amerisure is entitled to reimbursement for all amounts paid by Amerisure for the judgment;

3. Amerisure is entitled to recover its costs, expenses, and fees incurred in pursuing this action for coverage from USFI; and

4. All other relief to which Amerisure may be entitled.

Respectfully submitted,

By: */s/ R. Brent Cooper*

**R. BRENT COOPER**
State Bar No. 04783250
SDTX No. 18271
Brent.Cooper@cooperscully.com
**LEAD COUNSEL**

**ROBERT J. WITMEYER**
State Bar No. 24091174
SDTX No. 2600115
Rob.Witmeyer@cooperscully.com
**OF COUNSEL**

**COOPER & SCULLY, P.C.**
900 Jackson Street, Suite 100
Dallas, Texas 75202
Telephone: (214) 712-9500
Telecopy: (214) 712-9540

**ATTORNEYS FOR INTERVENOR, AMERISURE MUTUAL INSURANCE COMPANY**

**CERTIFICATE OF SERVICE**

I hereby certify that on May 26, 2016, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court for the Southern District of Texas, using the electronic filing system of the court. The electronic case files system sent a "Notice of Electronic Filing" to the following individuals who have consented in writing to accept this Notice as service of this document by electronic means:

Rebecca Suzanne DiMasi
Christopher Blair Dancy
Buchanan DiMasi Dancy & Grabouski
9600 Great Hills Trail
Ste 300 W
Austin, TX 78759
*Counsel for American Guarantee and Liability Insurance Company*

Patrick J Wielinski
John C. Warren
Cokinos Bosien & Young
800 Crestview Tower
105 Decker Court
Irving, TX 75062
*Counsel for Satterfield & Pontikes Construction, Inc.*

Brian Scott Martin
Thompson, Coe, Cousins & Irons, LLP
One Riverway, Suite 1400
Houston, TX 77056-1988
*Counsel for United States Fire Insurance Company*

*/s/ R. Brent Cooper*
**R. BRENT COOPER**